# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOSEPH WILLIAM JEAN-LOUIS,
    Petitioner,

v.                                                          Civil Action No.: 2:13 cv 11

TERRY O'BRIEN, WARDEN
UNITED STATES PENITENTIARY,
    Respondent.

## MEMORANDUM OPINION/ORDER AND REPORT AND RECOMMENDATION

### I.
### PROCEDURAL HISTORY

Petitioner filed his original petition under 28 U.S.C. §2241 in this Court on February 11, 2013 demanding immediate release from custody. In the filing he alleges: ineffective assistance of counsel at the pretrial and sentencing stages relating to the offense of conviction by changing her advice to proceed to trial on mental incompetency to plead guilty; denial of speedy trial; violation of his Fourth Amendment right against unreasonable searches and seizures when his luggage was removed from a taxi in which he was riding; "guilty plea was made unwillingly unknowingly by being/after subjected to psycho tropic medications" ... (haldol deconate injections) "since 1988 in the federal bureau of prisons at various mental health units which has caused irreversible brain damage effecting my ability to make rational decisions." [DE 1].

Following the filing of DE 1, the Court Clerk gave petitioner notice of General Guidelines for Appearing Pro Se in Federal Court and Notice of Deficient Pleading. [DE 2 and 3].

On February 25, 2013 Petitioner filed his motion for injunctive relief [DE 5] seeking a court order preventing the Special Housing Unit Lieutenant at Hazelton from placing Petitioner in any cell with physical restrains [waist shackles, leg irons] for the purpose of any suicide watch prevention;

preventing staff from forcing petitioner to take psycho-tropic medications [amitriptyline 50 mg tab, trihexphenidyl [sic] 5 mg tab or haloperidol decanuate [sic] injections; and to prevent petitioner from ever being returned to US Penitentiary or US Medical center at Beaumont, Texas, Springfield, Missouri. [DE 5].

March 6, 2013 Petitioner filed his motion for restraining order [DE 6]. In it Petitioner asserts he is in imminent extreme danger of being killed if returned to U.S.P. Beaumont, Texas, Federal Transfer Holding Facility Oklahoma City, Oklahoma, U.S.P. Florence Colorado, U.S.P. Lewisburg, Pennsylvania, US Medical Center For Federal Prisoners Springfield, Missouri. He then asks for the following relief: "So therefore this legal document is to motion this court to intervene and mandate order an resraing [sic] order to not at anytime have in any receiving and discharge holding cell at U.S.P. Hazelton with any other federal prisoners awaiting to be processed to board any federal bureau of prisons bus for transportation reasons and at no time should he ever be forced into any cell with federal prisoners from the area Wash D.C. or any federal inmate who is a Muslim by religious belief due to attempts to assault or kill Mr. Jean-Louis and inflict bodily harm to him in particular, Inmate Caldwell, BOP ID # 12260-007." [DE 6].

On March 25, 2013 Petitioner filed his "Petition for Habeas Corpus Pursuant to 28 U.S.C. §2241 on this Court's approved form. [DE 8]. Petitioner alleges that he previously filed a direct appeal which was denied and at least one motion under 28 U.S.C. §2255 which he avers was denied by the District Court and denied on appeal to the 8th Circuit Court of Appeals. In both his direct appeal and his motion under 28 U.S.C. §2255 petitioner avers "ineffective assistance of counsel" contending that his attorney did not inform him of his right to appeal and did not file a requested appeal. [DE 8]. He contends: "There is an unlawful detainer lodged against me."

# II.
# FACTUAL BACKGROUND

Petitioner, Joe W. Jean-Louis, [Petitioner] was charged in a one count indictment filed August 31, 2007 with robbing Guaranty Bank by intimidation on or about August 24, 2007 in Springfield, Greene County, Missouri in violation of 18 U.S.C. §2113(a).[1]

September 13, 2007 Petitioner's counsel filed a motion for a Psychiatric Examination pursuant to 18 U.S.C. §4241 and 4242 [DE 17].[2] The motion was granted on the same date. [DE 20]. Because of missed communications with the US Marshal, the Marshal did not transport Petitioner to the medical facility for the examination. The court was advised of this delay on November 30, 2007. [DE 22]. The Court by order dated February 8, 2008 set a hearing on the psychiatric report for February 19, 2008 [DE 23] which was continued to February 26, 2008 by order dated February 19, 2008. [DE 24].

April 4, 2008 Petitioner signed a written plea agreement in which he agreed to plead guilty to the sole count of the indictment. For purposes of the subject proceeding, the plea agreement contains the following relevant provisions:

1) Waiver of his right to trial and rights associated with a jury trial [Plea Agreement pp. 14(a, b, c, d, e, and f)];

2) Waiver of Appellate and Post-Conviction Rights [Plea Agreement, pp. 15 (a[3] and

---

[1] See Case no: 6:07-cr-03102-RED-1, Western District of Missouri available on PACER.
.

[2] Unless otherwise noted, all DE designations in the factual background are from Petitioner's criminal case.

[3] Plea Agreement 15a provides: "The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement."

        b[4])];

3)     Defendant's acknowledgment that he was satisfied with the representation of his attorney [Plea Agreement, pp. 20][5];

4)     Defendant's acknowledgment that he "knowingly committed this offense, and is in fact guilty of this offense" [Plea Agreement, pp. 2] and, a detailed stipulation of fact[6] [Plea Agreement, pp. 3].

Petitioner pled guilty to the sole count of the indictment on April 8, 2008. The District Judge found Petitioner competent. [DE 29].

A sentencing hearing was conducted by the Honorable Richard E. Door, Judge of the United States District Court for the Western District of Missouri, Southern Division on August 4, 2008. Defendant was present in person and was represented by Michelle K. Nahon of the Federal Public Defenders Office. The District Judge outlined the maximum statutory sentence [not more than 20 years imprisonment, not more than three 3 years supervised release], the guideline range of 151

---

[4] Plea Agreement 15b provides: "The defendant retains his right to appeal any Sentencing Guidelines issues that have not been agreed upon by the parties. However, the defendant otherwise expressly waives his right to appeal his sentence, directly or collaterally, on any ground, including agreed - upon Sentencing Guideline issues, except a sentence imposed in excess of the statutory maximum or an illegal sentence, that is, sentencing error more serious than an abuse of discretion or imposition of an unreasonable sentence."

[5] Plea Agreement 20 provides: "The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement."

[6] "Around 9:35 a.m. on August 24, 2007, Defendant entered a branch of Guaranty Bank ... Springfield, Greene County, Missouri, and robbed the bank. ..."
"In the robbery, Defendant approached a female teller, and handed her a note and a cash withdrawal slip for $10,000. ... The note states 'This is a holdup. I have a gun. Give me $10,000.00 dollars. 100s, 50s, 20s, 10s. No dye packs. No bait money. No transmitters. I will shoot. Don't push the alarm....' [Plea Agreement, pp. 3].

months to 188 months imprisonment based on Petitioner being found in the pre-sentence report to be at a total offense level of 29 and a criminal history category VI under the advisory guidelines. " [DE 44, p. 2].

Nahon requested a sentence at the low end of the guideline range to wit: 51 months arguing that even though Petitioner " was determined to be both competent and able to understand the nature and consequences of his acts, the pre-sentence investigation report sets forth a lengthy history of mental illness, and I'm sure the Court's reviewed that at Paragraphs 53 through 55, but that includes nine prior admissions to the Medical Center for Federal Prisoners here in Springfield while serving prior sentences and a current diagnosis of schizoaffective disorder, bipolar type." [DE 44, p. 3].

Petitioner spoke at his sentencing after being advised by the Court that he wasn't required to say anything. The record reflects that Petitioner stated he was sorry for committing the crime; he was sorry for any harm he caused the bank teller; he was homeless, without money and on his way to California when he committed the crime; and, he would "never do it ever again." " [DE 44, p. 4]. When questioned by the Judge as to whether he would commit another robbery when he was again homeless, Petitioner stated: "No, sir. I'm going to stay with the Veterans Administration Hospital. If I have any problem, I' going to the VA hospital. And I'm reporting to DAV headquarters to participate and help with Disable American Veterans." " [DE 44, p. 7].

The United States argued for a sentence at the high end of the advisory guidelines contending Petitioner had a long history of violent crimes [robberies of financial institutions] and committed the bank robbery soon after being released from one of those prior crimes. " [DE 44, p.4-53].

The District Judge sentenced Petitioner to serve 151 months imprisonment.

Beginning on March 4, 2009 though March 23, 2009 Petitioner filed a plethora of motions to stay his pending imprisonment including a pro se "Motion For A Stay Of The Judgement [sic] or

Order of A District Court Pending 2255 Motion To Vacate and Set Aside Sentence of U.S. District Court And Petitioner For Re-hearing En Banc In U.S. 8th Circuit Court of Appeals." [DE 45], a pro se Motion for Order for Stay Of Judgment or Injunction Pending Direct Appeal [DE 47], pro se Motion For Cash/Superseding Bond [DE 48], and pro se Motion for new trial based on newly discovered evidence [DE 53] . Petitioner's post sentencing motions were denied by two orders: DE 55 denying DE 45, 47, and 48 and DE 57 denying DE 53.

On March 13, 2009 Petitioner filed his pro se appeal to the 8th Circuit Court of Appeals assigning as errors: that his public defender refused in open court on the date of his sentencing to appeal his conviction; that his federal public defender was ineffective because she did not go to trial asserting an insanity defense; he did not willingly plead guilty because his rational thought processes were disturbed by over ten years of taking haldul decunate [sic] injections and other mind altering pyschotropic medications." [DE 49].

March 18, 2009 the 8th Circuit Court of Appeals dismissed the appeal for lack of jurisdiction. [No. 09-1576].

Petitioner filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 in the District of Colorado where he was then serving his sentence. The petition clearly challenges the validity of his conviction. He was ordered to show cause why his petition should not be dismissed because of the availability of an adequate and effective remedy under 28 U.S.C. §2255 in the sentencing court. Upon failure to show cause, the district court dismissed his application. The court of appeals for the 10th Circuit [No. 10-1496] conducted a de novo review and affirmed the ruling of the district court on June 7, 2012 [Doc. 01018857680].

Petitioner is now an inmate at U.S.P. Hazelton serving the 151 month sentence imposed on him by the United States District Judge for the Western District of Missouri. [DE 8 and 6:07cr03102

RED - DE 44, p. 8].

## III.
## DISCUSSION

A.  28 U.S.C. §2241 IMPROVIDENTLY FILED

A motion filed under §2241 is typically used to challenge the manner in which a sentence is executed. See In re Jones, 226 F.3d 338, 334 (4th Cir. 2000); In re Dorsainvil, 119 F.3d 245, 249 (3rd Cir. 1997). A motion filed pursuant to § 2255, on the other hand, is the primary means under which a federal prisoner may collaterally attack the legality of his conviction or sentence. See Charles v. Chandler, 180 F.3d 753, 756 (6th Cir. 1999) (collecting cases from other circuits).

However, despite the fact that a § 2255 petition is the proper vehicle for challenging a conviction or the imposition of a sentence, § 2241 may be used by a federal prisoner to challenge the legality of his conviction or sentence if he can satisfy the mandates of what is known as the Section 2255 "savings clause." See Reyes-Requena v. United States, 243 F.3d 893, 901 (5th Cir. 2001). The savings clause provides that a prisoner may file a writ of habeas corpus if a remedy through a § 2255 motion is "inadequate or ineffective to test the legality of his detention." See 28 U.S.C. § 2255. The petitioner bears the burden of demonstrating that the § 2255 remedy is inadequate or ineffective. See Jeffers v. Chandler, 253 F.3d 827, 830 (5th Cir. 2001); Pack v. Yusuff, 218 F.3d 448, 452 (5th Cir. 2000). It is well established that "in order to establish a remedy is 'inadequate or ineffective' under § 2255, there must be more than a procedural barrier to bringing a § 2255 petition." Hill v. Morrison, 349 F.3d 1089, 1091 (8th Cir. 2001). Furthermore, § 2255 is not inadequate or ineffective merely because the claim was previously raised in a § 2255 motion and denied, or because a remedy under the section is time-barred. United States v. Laurie, 207 F.3d 1075, 1077 (8th Cir. 2000).

The Fourth Circuit has examined the prerequisites for finding that §2255 is an inadequate or ineffective remedy. In the case of In re Jones, 226 F.3d 328 (4th Cir. 2000), the Fourth Circuit

concluded that

> §2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of the conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first §2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gate-keeping provisions of §2255 because the new rule is not one of constitutional law.[7]

Id. at 333-34.

In this case, the petitioner clearly challenges his guilty plea and conviction claiming that he was not in his right mind when he signed the written plea agreement and therefor his guilty plea was not knowingly and voluntarily made; that evidence obtained by the government from the cab in which he was riding post bank robbery was illegally seized; and that his attorney refused and failed to file an appeal. All of these challenges go to the legality of his conviction and not to how his sentence of 151 months is being executed. Under § 2241, the petitioner must first establish that he is entitled to review under § 2241 by meeting the Jones requirements.[8] This the petitioner has not, and cannot, do. Moreover, given his colloquy during the sentencing hearing, he cannot sustain a claim of actual

---

[7]The "gatekeeping" requirements provide that an individual may only file a second or successive §2255 motion if the claim sought to be raised presents:
(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the movant guilty of the offense; or
(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.
28 U.S.C. § 2255; see Jones, 226 F.3d at 330.

[8] See Bousley v. United States, 523 U.S. 614, 623 (1998) (In order to "open the portal" to a § 2241 proceeding, the petitioner must first show that he is entitled to the savings clause of § 2255. Once those narrow and stringent requirements are met, the petitioner must then demonstrate actual innocence. Actual innocence means factual innocence, not mere legal insufficiency.); see also Herrera v. Collins, 506 U.S. 390, 404 (1993) ( "A claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."); Royal v. Taylor, 188 F. 3d 239, 243 (4th Cir. 1999) (federal habeas relief corrects constitutional errors). Thus, a freestanding claim of actual innocence is not cognizable in federal habeas corpus and such claim should be dismissed.

innocense. Therefore, because the petitioner clearly attacks the validity of his conviction and sentence, and fails to establish that he meets the Jones requirements, the petitioner has not demonstrated that § 2255 is an inadequate or ineffective remedy and has improperly filed a § 2241 petition.

B.   PRISON CONDITIONS

Petitioner next seeks a restraining order from this court contending he is in danger is sent to certain prisons, housed with or held in close proximity to certain types of inmates and one particular inmate. He also seeks to prohibit the BOP from transferring him to the medical facility at Beaumont or to shackle or restrain him in a cell for protection against suicide. These are best described as diffuse and factually unsupported requests for relief.

"[F]ederal Courts must take cognizance of the valid constitutional clams of prison inmates." Turner v. Safley, 482 U.S. 78, 84 (1987) citing Procunier v. Martinez, 416 U.S. 396, 405 (1974). "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution. *Id.* "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* 89.

Although prisoners are not completely without the Constitution's protection, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342 at 348 (1987)(internal quotation marks omitted). For that reason, "once the Department demonstrates that it is pursuing a legitimate governmental objective, and demonstrates some minimally rational relationship between that objective and the means chosen to achieve that objective, we must approve of those means." Hines v. South Carolina Dept. Of Corrections, 148 F.3d 353, at 358(4th Cir. 1998).

"The rationale for judicial deference is greatest when the maintenance of prison order is at

stake. By using the language of rational basis scrutiny, the Supreme Court chose the most deferential possible standard of review for cases presenting such issues of prison administration. The Supreme Court also explicitly rejected heightened judicial scrutiny of prison security policies. Rigorous scrutiny, the Court noted, is simply "not appropriate for consideration of regulations that are centrally concerned with the maintenance of order and security within prisons." Thornburgh v. Abbott, 490 U.S. 401, 409-10 (1989) "Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." Turner, supra at 89. In the difficult and dangerous business of running a prison, frontline officials are best positioned to foresee threats to order and to fashion responses to those threats. Hence, the "evaluation of penological objectives is committed to the considered judgment of prison administrators, 'who are actually charged with and trained in the running of the particular institution under examination.' " O'Lone, supra at 349 (quoting Bell v. Wolfish, 441 U.S. 520, 562, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). When a state correctional institution is involved, the deference of a federal court is even more appropriate. Turner, supra at 85. Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell, supra at 547.

      Olim v. Wakinekona, 461 U.S. 238 (1983) involved a Hawaii state prisoner deemed a trouble maker and who was transferred to California prison to continue serving his Hawaii sentence. Held: "An interstate prison transfer does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself. Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State so as to implicate the Due Process Clause directly when an intrastate prison transfer is made, he has no justifiable expectation that he will be

incarcerated in any particular State." However, Courts are "ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Id.* '[T]he problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree." *Id.* "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers counsel a policy of judicial restraint." *Id.* 85.

In an earlier state prisoner transfer case, Mr. Justice White held: "[T]hat where under state law prisoner had no right to remain at any particular prison facility and no justifiable expectation that he would not be transferred unless found guilty of misconduct, and transfer of prisoner was not conditional upon or limited to occurrence of misconduct, due process clause did not require hearing in connection with transfer of prisoner." Montanye v. Haymes, 427 U.S. 236 (1976).

Similarly, Mr. Justice White held in Meachum v. Fano, 427 U.S. 215 (1976) that "due process clause of the Fourteenth Amendment does not entitle state prisoner to a hearing when he is transferred to a prison the conditions of which are substantially less favorable to prisoner absent state law or practice conditioning such transfers on proof of serious misconduct or occurrence of other events."

The undersigned concludes the complaints of Petitioner lack present factual bases sufficient to warrant the Court to conduct further inquiry. The claims are speculative at best. Petitioner seeks relief on the basis of movement of him from one facility to another when there is no evidence or allegation that such movement is contemplated. There is no allegation of a present threat to Petitioner's bodily welfare or life. Not one of Petitioner's allegations rise to the level of an alleged

violation of a Constitutional right or protection. Petitioner mistakenly believes the Court can micro-manage the prisons that are run by a separate and distinct branch of government. All of Petitioner's concerns are appropriately left to the expertise, planning, and the committed resources of the Bureau of Prisons.

## IV.
## RECOMMENDATION

Based on the foregoing, the undersigned recommends that Petitioner's §2241 petition [DE 1 AND DE 8] be **DENIED and DISMISSED WITH PREJUDICE**.

Based on the foregoing, the undersigned recommends that Petitioner's Motions for restraining orders and injunctive type relief encompassed in DE 5 and DE 6 be **DENIED WITHOUT PREJUDICE.**

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John Preston Bailey, Chief United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet..

DATED: April 4, 2013

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE